## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

STEPHANIE DAWSON           )
                                   )
             Plaintiff,        )
                                   )     Case No. 17-cv-000283
      v.                 )
                                   )     Judge Sharon Johnson Coleman
THOMAS J. DART, Sheriff of Cook County, )
and WILLIAM JONES, an Officer of the   )
Sheriff of Cook County, and          )
COOK COUNTY,               )
                                   )
            Defendants.     )

### MEMORANDUM AND ORDER

Plaintiff, Stephanie Dawson brings this action under 42 U.S.C. § 1983 and the state law of willful, wanton and reckless disregard against Defendants, Thomas J. Dart, Sheriff of Cook County, and William Jones, an officer of the Sheriff of Cook County, and also seeks indemnification from Cook County for the Defendants' conduct. Defendants now move to dismiss Dawson's Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below Defendants' motion is granted, and Dawson's Second Amended Complaint is dismissed.

### Background

The following facts are taken as true for the purpose of deciding this motion. In May 2016, Dawson and Rhonda Robinson were inmates housed together at the Cook County Department of Corrections ("Corrections"), which was then operated by the Sheriff of Cook County. Inmate housing assignments were determined by either security, medical care, or mental need classifications. At the time in question, the Cermak facility of the Cook County Health and Hospital Systems ("County Hospital") conducted medical and psychological screenings of inmates to determine whether to house them in the general population or in the Residential Treatment Unit for specific

1

mental health care.  Inmates with mental health care needs were designated either "P2" or "P3."

County Hospital informed Corrections that individual inmates designated P2 should be in "Mental

Health Outpatient Housing" and inmates labeled as P3 should be in "Mental Health Intermediate

Housing," which received more staff and services than other tiers within the Residential Treatment

Unit.  Per the Illinois Administrative Code, Title 20, Part 701, Section 701.70(b)(6)(A), the mentally

ill, developmentally disabled, and emotionally disturbed inmates shall be housed and maintained

under supervision as recommended by a mental health professional.

It was not always the practice of Corrections to assign inmates to the type of housing

prescribed by the County Hospital; sometimes P3 inmates would be placed in the outpatient unit

where P2s were housed.  Robinson, a P3, was placed in P2 housing with Dawson from May 21-26,

2016.  Officer Jones, who had no prior experience or training in assigning inmates to housing tiers,

was responsible for this pairing.  During this time, Robinson attacked and repeatedly punched

Dawson.  Dawson contends that deliberately placing P3s with P2s was a practice tolerated and

allowed by Sheriff Dart, which is the basis of this Section 1983 action.  Defendants have moved to

dismiss this case for failure to state a claim.

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint

must contain sufficient factual allegations to state a claim for relief that is plausible on its face and

above speculation.  *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009).  When reviewing a motion to dismiss,

the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences

in the plaintiff's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 499 F.3d

629, 633 (7th Cir. 2007).

**Discussion**

**Officer Jones**

Officer Jones moves to dismiss Count IV against him because Dawson failed to properly allege his individual liability in her attack.

Under Section 1983, a government official may be found liable in his individual capacity for actions taken under the color of state law if the plaintiff shows that the official personally caused the deprivation. *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). A successful claim of deliberate indifference towards an inmate's safety requires plaintiff to show that the conditions of her confinement created a substantial risk of harm and that the prison official had subjective knowledge of the harm but disregarded the risk. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008).

Dawson's allegation of deliberate indifference contends that she was assaulted because Officer Jones improperly placed her in a cell with a person who was classified as P3, needing more access to mental health services. In order for Dawson's claim of deliberate indifference against Officer Jones to survive at this stage, she needed to allege facts showing there was a substantial risk of harm that Officer Jones was aware of and disregarded when he assigned her and Robinson to the same cell. *Grieveson*, 538 F.3d at 775. Dawson has done neither here. The Complaint distinguishes between P2 and P3 inmates only based on their medical needs. It never alleges that one designation was classified as prone to violence. There can be mental health conditions that require the consistent care and supervision offered in the intermediate facility, but do not deem the patient dangerous or violent. Absent facts assigning some known danger to the P3 status or even Robinson, this Court cannot make the logical connection that the pairing of Robinson and Dawson alone caused the attack. *Cty. of McHenry v. Ins. Co. of the West.*, 438 F.3d 813, 818 (7th Cir. 2006); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013).

Regardless of whether or not Officer Jones complied with County Hospital's recommendation that P2 and P3's be housed separately, the complaint fails to allege facts showing that Officer Jones was aware that P3s, or even Robinson, posed a safety risk to Dawson, or that he purposely disregarded that risk. As this critical fact is totally absent from the complaint, the claim is not sufficient and Count IV is dismissed.

**Sheriff Dart**

Sheriff Dart similarly moves to dismiss the claims against him because Dawson has not alleged facts supporting individual or official liability. Dawson contends that using the phrase "allowed and tolerated" implicates Dart because he was the decision-maker and supervisor of the prison.

*Official Capacity*

A local government official may be sued in his official capacity under Section 1983 when the local government's "policy or custom" was the moving force in the violation of federal law. *Warren v. Sheriff of Cook Cty. Thomas Dart*, No. 09-cv-3512, 2010 U.S. Dist. LEXIS 124671, at *23 (N.D. Ill. Nov. 24, 2010) (Dow, J.). *Respondeat superior* is not an appropriate theory for finding liability for an official capacity claim, as an official cannot be held liable merely because his subordinates violated a plaintiff's constitutional rights. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015). A plaintiff may demonstrate an official policy or custom by alleging facts showing: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread, unwritten practice that is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the act of a person with final policymaking authority. *Rossi*, 790 F.3d at 737.

In this case, Dawson offers two theories to demonstrate "policy or custom." First, she contends that, as a practice, Corrections regularly assigned P3 and P2 inmates to the same cells

despite County Hospital's recommendation that they be housed separately due to their differing mental health care needs. Second, Dawson contends that Sheriff Dart had final decision-making authority over these decisions because he tolerated and allowed the practice of mismatched assignments.

To establish an unofficial custom, Dawson must offer facts that show the existence of a widespread practice so permanent and well-settled that it constitutes a policy with the force of law. A custom is typically demonstrated by alleging "a series of bad acts that together raise the inference of such a policy." *Barrows v. Larry*, No. 16 C 7882, 2018 U.S. Dist. LEXIS 27154, at *12 (N.D. Ill. Feb. 21, 2018)(Kendall, J.)(citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Allegations of a single incident of unconstitutional conduct are typically not sufficient to establish a policy of unconstitutional actions. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

Here, Dawson identifies Officer Jones as having been poorly trained and deliberately indifferent in making her housing assignment, but it does not allege any other examples of officers mismatching inmates with differing mental health classifications. Dawson has not alleged any record of other P2-P3 pairings or other P2 victims of P3 violence at the Corrections facility. Unfortunately for Dawson, the events arising out of this single incident are not sufficient to state a plausible claim that Sheriff Dart had a widespread practice that resulted in injuries like the ones Dawson sustained. The allegations set forth in the Second Amended Complaint impute the inadequate training and conduct of Officer Jones upon the entire department with no factual basis for making such an inference. Additionally, as stated above, the complaint does not sufficiently allege a causal connection between the mismatched housing assignment and Dawson's injury.

The facts alleged do not demonstrate that there was a policy or custom of intermingling the housing assignments of P2s and P3s or that Sheriff Dart was the final authority in that practice. Accordingly, the claim is insufficient to support that Sheriff Dart liable in his official capacity.

*Individual Capacity*

In order for Sheriff Dart to be individually liable here, Dawson must show that the alleged constitutional violation occurred at Sheriff Dart's direction or with his knowledge, consent or participation. *Alejo*, 328 F.3d at 936. As mentioned above, a claim of personal liability under Section 1983 requires plaintiff to allege a defendant's personal involvement in the deprivation of her rights. *Grieveson*, 538 F.3d at 775.

The Second Amended Complaint makes no direct or indirect allegation that Sheriff Dart is personally implicated or had a direct role in the decision to place Dawson in the cell with Robinson. Even reading the allegation in a light most favorable to Dawson, plaintiff's general and conclusory assertion of Sheriff Dart's tolerance is not sufficient to state a case for personal liability under Section 1983. *See Jackson v. Sheriff of Cook Cty.*, No. 06 C 0493, 2007 U.S. Dist. LEXIS 21141, at *35 (N.D. Ill. Mar. 23, 2007)(Coar, J.)(citing *Kelly v. Mun. Courts of Marion County, Ind.*, 97 F.3d 902, 909 (7th Cir.1996)("[T]he Seventh Circuit has made clear that this general authority of a warden is not sufficient for establishing liability.").

As Dawson has not alleged facts to adequately state a claim against Sheriff Dart, officially or individually, Defendant's motion is granted Counts I, II, and III are dismissed.

*Willful, Wonton, and Reckless Disregard*

Typically, if federal claims are dismissed, district courts have discretion to relinquish jurisdiction over pendant state-law claims rather than address them on the merits. *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015); *see also, e.g.*, *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) ("[S]ubsection (c)(3) expressly authorizes the district judge to dismiss a supplemental claim when the federal claims have dropped out of the case.").

Here, since all of the federal claims are dismissed, this Court declines to retain supplemental jurisdiction over Count V. Accordingly, the remaining state law claim is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

*Indemnification*

Since all of the other claims have been dismissed, Count VI for indemnification is rendered moot.

**Conclusion**

Based on the foregoing, this Court grants Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint without prejudice.

IT IS SO ORDERED.

ENTERED:

SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: 9/10/2018