IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DAWSON )<br>    Plaintiff )<br>)<br>v. )<br>)<br>THOMAS J. DART, Sheriff of Cook County et al. )<br>)<br>    Defendants ) | NO. 1:17-cv-000283<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Jeffrey Cole |

## RULE 59 MOTION TO ALTER OR AMEND JUDGMENT

Now comes the Plaintiff, Stephanie Dawson, by her attorneys, DiVincenzo Schoenfield Stein, and pursuant to Federal Rule of Civil Procedure Rule 59(e), moves this Honorable Court to alter or amend the Judgment entered on September 10, 2018. The relief sought by Plaintiff is either:

    a. Vacate the Judgment and reinstate the case with the complaint to stand;

    b. Vacate the Judgment as to certain dismissed counts and allow Plaintiff to file an amended complaint to re-plead counts which remain dismissed; or

    c. Amend the Judgment to dismiss without prejudice and with leave to amend the complaint.

**I. DISMISSING THE COMPLAINT WITH PREJUDICE AND WITHOUT LEAVE TO AMEND WAS MANIFEST ERROR AND PLAINTIFF SHOULD BE ALLOWED TO FILE AN AMENDED COMPLAINT.**

1. It is proper to move to file an amended complaint as part of a Rule 59(e) motion. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Haynes v. City of Chicago*, No. 12 C 2980, 2014 WL 274107, at *1–2 (N.D. Ill. Jan. 24, 2014) (granting a Rule 59(e) motion with leave to amend). Plaintiff was not required to ask for leave to amend before the Judgment was entered, as "plaintiff was entitled to wait and see if any pleading problems the court might find

1

could be corrected", before asking for leave to amend. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

2. The Judgment ruled only on the federal claims. The Judgment was the first time that the Court ruled on a motion to dismiss the federal claims. (The Judgment did not rule on the pendant State claims, but declined to retain jurisdiction over them.) Defendants sought to plead piecemeal to the original Complaint. At that time, Officer Jones was in the case only as a John Doe. Sheriff Dart only moved to dismiss pendent state negligence claims arguing qualified immunity. The First Amended Complaint was filed in response to the Court's ruling and pled pendent state counts based on willful, wanton and reckless disregard of Plaintiff's safety. The impetus behind the Second Amended Complaint was new discovery which allowed Plaintiff to eliminate John Doe defendants and to name William Jones as a defendant, and which revealed a basis for a new count for failing to train Officer Jones. So, the Judgment dismissing the federal claims is the initial ruling on the sufficiency of the civil rights claims.

3. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff has not engaged in undue delay, bad faith or been dilatory. Discovery is complete. There have not been "repeated failures to cure deficiencies by amendment previously allowed" as the Judgment is the first ruling on a motion to dismiss the civil rights claims. Nor is amendment futile. Therefore, it was manifest error for the Court to dismiss with prejudice and without leave to amend.

> [T]the extraordinary nature of [Rule 59(e)] does not mean that a different standard applies—at least when judgment was entered at the same time the case was first

dismissed. When the district court has taken the unusual step of entering judgment at the same time it dismisses the complaint, the court need not find other extraordinary circumstances and must still apply the liberal standard for amending pleadings under Rule 15(a)(2).

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.,* 786 F.3d 510, 521 (7th Cir. 2015).

5. The Judgment gives no reason for dismissing the civil rights claims with prejudice and without leave to amend. "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182. "As we stated in *Runnion:* '[A] district court cannot nullify the liberal right to amend under Rule 15(a)(2) by entering judgment prematurely at the same time it dismisses the complaint that would be amended. As with pre-judgment motions for leave to amend, the district court must still provide some reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend, and we will review that decision under the same standard we would otherwise review decisions on Rule 15(a)(2) motions for leave to amend." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). The Judgment does not provide a reason for the dismissal without prejudice. Therefore, dismissing with prejudice was manifest error.

5. *Foman*, *Runnion*, *Gonzalez-Koeneke* and *Bausch* were all appeals from denials of Rule 59(e) motions. In the event that the Court does not vacate the dismissals, a proposed amended complaint is attached hereto as Exhibit A. The proposed amended complaint adds more detailed allegations to specifically allege:

3

- Some P3 inmates would be expected to have a history of violence and/or who be prone to violence, at least under stress or if their mental status worsened;
- Robinson was being held in the Cook County Department of Corrections ("CCDOC") on a charge of battery;
- Being confined in the CCDOC without needed intermediate mental health care would stress some P3 inmates, would decrease the ability of some P3 inmates to control aggressive, violent impulses, and would substantially increase the risk that some P3 inmate, including Robinson, would act out violently against another inmate;
- Housing Robinson on Tier 5C and not on a tier designated as mental health intermediate housing created an obvious risk that Robinson would become dangerous to herself or others, including Plaintiff, as a result of not receiving needed mental health care;
- After her attack on Dawson, Robinson was immediately removed from the Dawson's P2 housing tier;
- Within two hours of Robinson's attack on Dawson, Robinson was reclassified to P4 and placed in Mental Health Infirmary Housing. P4 designates a Psychiatric Special Care Unit (PSCU) for severe functional impairment with regression, disorganization, and chaotic functioning, such as behavior related to major mental illness that results in imminent risk of harm to self or others;

- By May 31, 2016, after five days of receiving the mental health care that she needed, Robinson's mental status improved to such an extent that she was reclassified to P2;

- Not having intermediate mental health care from May 21-26, led to Robinson's mental health deteriorating from the P3 level to the P4 level and was a cause of her attack on Dawson;

- Robinson's mental status deteriorated while not receiving the intermediate mental health care she needed as a P3, leading to her attack on Dawson;

- Tier 5B was used to house P3 inmates and Cook County Health and Hospital Systems ("CCHHS") provided mental health intermediate care to inmates on Tier 5B;

- Tier 5C was used to house P2 inmates and CCHHS provided mental health outpatient care to inmates on Tier 5C;

- On and before May 26, 2016, Plaintiff was classified as a P2 inmate and was housed in Tier 5C, a tier intended for P2 inmates and designated as mental health outpatient housing;

- For various days in May 2016, in addition to Robinson, the following inmates with P3 designations were housed in Tier 5C: Linda McWilliams (May 19-23); Tierico Jones (May 19-23); Samantha Williams (May 19-24); Myesha Holmes (May 26-June 7); Susan Ringer (May 26-June 2);

- Officer Jones knew that P2 and P3 were mental health care designations that were supposed to be a factor in making housing assignments;

- Officer Jones did not know the difference between a P2 and a P3 mental health status, knew that he did not know the difference, and did not make himself aware of the difference;

- Officer Jones did not make himself aware that some tiers provided "Mental Health Intermediate Housing" and some did not, despite CCHHS housing alerts designating mental health outpatient housing for P2s and mental health intermediate housing for P3s;

- Officer Jones was deliberately indifferent to the well-being and safety of inmates, including Plaintiff, in that he assigned Robinson to Tier 5C based on there being space there, without regard for whether it was designated as "Mental Health Intermediate Housing", without regard to the requirement of Ill Admin. Code 701.70(b)(6)(a) that the CCHHS recommendation for mental health intermediate housing be followed, and without regard to his aforesaid willful ignorance regarding inmate mental health housing.

**II. THE DANGER OF HOUSING ROBINSON WITHOUT P3 MENTAL HEALTH CARE SERVICES WAS SUFFICIENTLY ALLEGED.**

6. The Judgment's primary conclusion is that the complaint did not sufficiently allege that housing Robinson in a P2 Tier, without intermediate mental health care services, was a danger to which Defendants were deliberately indifferent.

7. The Supreme Court's standard of "plausibility" in pleading "does not imply that the district court should decide…which version is more likely than not" and is not a probability requirement. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th 2010). "[T]he [Supreme] Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things

have happened, not *did* they happen." *Swanson*, 614 F.3d at 404. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Judgment fundamentally misapplied this standard. The Judgment erroneously reads the allegations as insufficient to conclude that deliberate indifference happened, rather than asking whether deliberate indifference could have happened. This misanalysis violates the law established by the Supreme Court and the Seventh Circuit. The Judgment recognizes that the deliberate indifference alleged could have happened as a result of not providing Robinson with P3 mental health care. The Judgment recognizes that, on the facts alleged, not providing Robinson with P3 mental health care services could have made her more dangerous and could have resulted in her attacking Dawson. The Judgment does so, by recognizing that not providing Robinson with intermediate mental health care services might have made her dangerous. The Judgment then deviates from the standard established by the Supreme Court and the Seventh Circuit by dismissing because more specific allegations were not made, despite the facts alleged being plausible enough to establish that not providing Robinson with intermediate mental health care made her more dangerous and was a cause of her attacking Dawson. "Absent facts assigning some known danger to the P3 status or even to Robinson, the Court cannot make the logical connection that the pairing of Robinson and Dawson alone caused the attack." Judgment at 3.

8. Furthermore, dismissing for failure to sufficiently allege that "the pairing of Robinson and Dawson *alone* caused the attack" is manifestly erroneous. (Emphasis added.) Placing Robinson in Dawson's outpatient mental health tier need only be a cause, not the only cause.

> [T]here is no rule demanding that every case have only one proximate cause. To the contrary, 'multiple proximate causes are often present' and 'an actor's tortious conduct need not be close in space or time to the plaintiff's harm to be

7

> a proximate cause.' Rest.3d Torts § 29 cmt. b. Thus it does not matter that other acts are also proximate causes of the ultimate [civil rights] violation.

*Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012).

9. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence…, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Based on the allegations of the complaint, it was plausible that the Defendants deliberately disregarded the risk that:

- Among the P3 inmates would be inmates with a history of violence, like Robinson, and/or who were prone to violence, at least under stress such as jail confinement;
- Being confined to the CCDOC and not being provided needed mental health care could stress P3 inmates and decrease the ability of some P3 inmates to control aggressive, violent impulses;
- Robinson could be such a P3 inmate;
- Robinson's mental status could deteriorate while not receiving the intermediate mental health care she needed as a P3;
- These circumstances could substantially increase the risk that a P3 inmate, such as Robinson, would act out violently against another inmate, like Dawson.

As noted above, the proposed amended complaint specifies these facts. *See* ¶5, *supra*.

10. A "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite

his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Liability depends neither on awareness of which inmate, among a group of inmates, will eventually be assaulted, nor awareness of which "specific prisoner" will "eventually" commit the assault. *Id.*, 511 U.S. at 843–44. So, deliberate indifference does not require that Defendants were aware that it would be Robinson, of the P3 inmates, who would become violent, or that it would be Dawson, among the inmates housed with Robinson, who would be the victim.

11. It was alleged that not housing Robinson in mental health intermediate housing as recommended in CCHHS's alert violated the Illinois Administrative Code, Ill Admin. Code 701.70(b)(6)(a). Knowledge of the County Jail Standards in the Illinois Administrative Code must be imputed to the Defendants. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Imputed knowledge of the mandate in the Illinois Administrative Code 701.70(b)(6)(a) to follow the housing recommendations in CCHHS alerts must be weighed and underscores the obviousness of a risk to health and safety not only to Robinson, but to all other detainees as well.

12. Deliberate indifference is generally a question of fact for a jury. *Long v. County of Los Angeles*, 442 F.3d 1178, 1190-91 (9th Cir. 2006); *Thomas v. Sheahan*, 499 F.Supp.2d 1062, HN 19 (N.D. Ill. 2007). Here, Plaintiff has pled sufficient facts to overcome Defendants' motion to dismiss and her allegations should properly be decided by a jury.

### III. SHERIFF DART SHOULD NOT HAVE BEEN DISMISSED FROM THE HOUSING COUNTS.

13. The Judgment acknowledges that pleading policy or custom properly alleges liability in one's official capacity and that this can be done either by an express policy, or by an established custom, or by the act of a final decision maker.

14. Contrary to the Judgment, by law, Sheriff Dart is the final decision maker of the Sheriff of Cook County. Paragraph 25 alleged: "Housing P3 inmates in P2 mental health outpatient housing tiers, contrary to mental health housing recommendations from Cermak to house P3 inmates in mental health intermediate housing, was allowed and tolerated by the Sheriff." (Cermak is part of CCHHS.) The Sheriff allowing and tolerating improperly housing P3 inmates in mental health outpatient housing tiers alleges both an established custom, as well as acts by a final decision maker. It is also an allegation of more than one incident. The allegation is in the plural, not the singular. More detail is not required under notice pleading. Normal federal rules of notice pleading apply to 1983 complaints, including complaints alleging municipal liability, in this case the liability of the Sheriff of Cook County, in his official capacity. *Johnson v. City of Shelby, Mississippi*, 135 S.Ct. 346, 346–47 (1993). Pleading civil rights claims does not require greater specificity than other claims. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993).

15. Further, "systematic practice" and "policy" was alleged. "[I]t was the systematic practice of the CCDOC not to always assign inmates to the mental health housing recommended by Cermak." Plaintiff also alleged "[I]t was the systematic practice of CCDOC to sometimes assign inmates designated by Cermak as P3, to a tier designated as mental health outpatient housing, regardless of recommendations by Cermak that those P3 inmates should be housed in a tier designated as mental health intermediate housing." Thus, Plaintiff has alleged sufficient facts against Sherriff Dart in his individual capacity to overcome defendant's motion to dismiss.

**IV. COUNT III, FAILURE TO TRAIN OFFICER JONES, SHOULD NOT HAVE BEEN DISMISSED.**

16. The Judgment appears to base the dismissal of Count III, lack of training, on the allegation of a lack of training being limited to Officer Jones. There are two fundamental flaws with this analysis.

17. First, this was not the first time that Officer Jones was given the housing assignment responsibilities. Paragraph 37 alleged: "Assigning inmates to housing tiers was not Officer Jones' usual assignment. But, on various occasions time prior May 21, 2016 and on May 21, 2016, Officer Jones was assigned to fill-in and be responsible for assigning inmates to housing tiers." So, on a single incident analysis, it is not that whether only Officer Jones was not adequately trained, it was that Officer Jones was repeatedly made the housing assignment officer "on various occasions" without being trained.

18. Second, a single incident does not matter when the need for training is obvious. Inadequate training is a policy equivalent and creates liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). When "in light of the duties assigned to specific officers…the need for more…training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights…the failure to provide proper training may fairly be said to represent a policy" and liability attaches "if it actually causes injury." *Id*., at 390. Therefore, where the need for training is obvious, no prior incidents are required to find that the lack of training amounts to policy. Here, the need to train the housing assignment officer about the meaning and need to follow the CCHHS alerts, about the requirement to do so under 20 Ill Admin. Code 701.70(b)(6)(a), and about the difference between outpatient and intermediate mental health care housing tiers, were obvious before Dawson was attacked. Thus, the failure to

11

provide training as to these matters may fairly be said to represent a policy. Furthermore, liability attaches because Dawson was actually physically attacked, resulting in physical injury.

      WHEREFORE, Plaintiff asks that this motion be granted and that the Judgment be altered or amended to: vacate the Judgment and reinstate the case with the complaint to stand; or vacate the Judgment as to certain dismissed counts and allow Plaintiff to file an amended complaint to re-plead counts which remain dismissed; or amend the Judgment to dismiss without prejudice and with leave to amend the complaint.

      Respectfully submitted,

      /s/ Rick Schoenfield

DiVincenzo Schoenfield Stein
33 N. Dearborn
Suite 1130
Chicago, IL 60602
Telephone (312) 344-4809
rschoenfield@dsschicagolaw.com

**CERTIFICATE OF SERVICE**

I, Rick Schoenfield, an attorney, being duly sworn on oath depose and state that I caused the RULE 59 MOTION TO ALTER OR AMEND JUDGMENT to be served by the ECF System of the United States District Court of the Northern District of Illinois on all counsel of record before the hour of 6:00 p.m. on October 4, 2018.

/s/Rick Schoenfield
Rick Schoenfield

DiVincenzo Schoenfield Stein
Attorneys for Plaintiff
33 N. Dearborn, Suite 1130
Chicago, IL 60602
(312) 334-4809
rschoenfield@dsschicagolaw.com