# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DAWSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-00283 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| THOMAS J. DART, Sheriff of Cook ) | |
| County, WILLIAM JONES, an Officer of ) | |
| the Sheriff of Cook County, and ) | |
| COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In her third amended complaint, plaintiff Stephanie Dawson brings federal constitutional claims pursuant to 42 U.S.C. § 1983 under the Court's original jurisdiction, 28 U.S.C. § 1331, and supplemental state law claims under 28 U.S.C. § 1367(a), against defendants Cook County Sheriff Thomas Dart ("Sheriff Dart") and Officer William Jones ("Officer Jones"), based on a May 2016 incident at the Cook County Jail ("CCJ"). Before the Court is defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.[1] For the reasons discussed below, the Court grants defendants' motion as to Dawson's federal constitutional claims with prejudice because Dawson has already had an opportunity to cure the deficiencies in her allegations. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (there is a "presumption in favor of giving plaintiffs at least one opportunity to amend."). The Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims, 28 U.S.C. § 1367(c)(3), and thus dismisses these claims without prejudice.

---

[1] The Court granted in part defendants' first motion to dismiss on June 9, 2017, in relation to the Illinois Local Government and Governmental Employees Tort Immunity Act [24]. The Court also granted defendants' second motion to dismiss on September 10, 2018, concerning plaintiff's constitutional claims [68], but later granted plaintiff leave to file the present third amended complaint [75]. The Court presumes familiarity with its earlier rulings.

**Background**

The following facts are taken as true and viewed in Dawson's favor for purposes of this motion. In May 2016, Dawson and Rhonda Robinson were housed on the same tier at the CCJ, which is operated by Sheriff Dart. Cook County Department of Corrections ("CCDOC") staff place pretrial detainees in housing assignments based on security, medical care, or mental health classifications. The Cermak facility of the Cook County Health and Hospital Systems ("Cermak") conducts medical and psychological screenings in determining whether to house detainees in the general population or in the Residential Treatment Unit ("RTU"), which provides for mental health care. Cermak designates detainees with mental health care needs as "P2", "P3", or "P4" based on the severity of their symptoms. At the time of the May 2016 incident, P2 detainees were placed in mental health outpatient housing, which was Tier 5C of the RTU. On the other hand, P3 detainees were placed in mental health intermediate housing, which was Tier 5B.

Cermak staff had classified Dawson as P2, and thus she was housed on Tier 5C. Robinson was classified as P3. Despite Robinson's P3 classification of which Officer Jones was aware, he assigned Robinson to the wrong tier, namely, Tier 5C where Dawson was housed. On May 26, while on Tier 5C, Robinson attacked and repeatedly punched Dawson. Jail staff immediately removed Robinson and reclassified her to P4, placing her in Cermak's mental health care infirmary. Five days later, Cermak staff reclassified Robinson's mental health status to P2.

Dawson alleges that housing Robinson on Tier 5C substantially increased the risk that Robinson would become a danger to herself and others because she did not receive the requisite mental health care for her classification. Also, Dawson asserts that Robinson's mental health deteriorated while she was on the wrong tier from May 21 to May 26 and that housing Robinson on Tier 5C caused her to attack Dawson. According to Dawson, although Officer Jones was aware of

2

Robinson's P3 classification, he was ignorant of the difference between P2 and P3 mental health designations and did nothing to become aware of the difference.

**Legal Standard**

A Rule 12(b)(b) motion to dismiss tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Under the federal pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In other words, to survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Id.* at 570. A complaint is facially plausible when a plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

*Failure to Protect Claim Against Officer Jones*

Dawson's constitutional claim against Officer Jones is that he failed to protect her from Robinson's attack. *Rice v. Correctional Med. Servs.*, 675 F.3d 650, 669 (7th Cir. 2012) ("Jail officials have a [constitutional] duty to protect inmates from violent assaults by other inmates."). Because Dawson was a pretrial detainee at the time of the incident, her claim falls under the due process clause of the Fourteenth Amendment, which is governed by the "objective reasonableness" standard set forth in *Kingsley v. Hendrickson*, ___U.S.___, 135 S. Ct. 2466, 2475, 192 L.Ed.2d 416 (2015). *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). In general, the elements of a failure to protect claim under *Kingsley's* objective standard include that: (1) defendant acted purposefully, knowingly, or

recklessly with respect to a risk of harm; and (2) defendant's conduct was unreasonable given the totality of the circumstances. *See McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc). Under the first element, a plaintiff must show more than negligence or gross negligence to prevail. *See Kingsley*, 135 S.Ct. at 2472; *Miranda*, 900 F.3d at 353.

Dawson has failed to plausibly allege that Officer Jones' conduct in housing her on the same tier with Robinson, despite their different mental health care classifications, was purposely, knowingly, or recklessly in disregard of the consequences, namely, that it would increase the risk of harm to Dawson. Construing Dawson's allegations as true and all reasonable inferences in her favor, Officer Jones knew that Robinson and Dawson had different mental health care classifications and that Robinson was being detained for a battery charge. Dawson's allegations about Robinson's history of violence and mental health classification, however, did not put Officer Jones on notice of any substantial risk of harm beyond the "baseline dangerousness of prison life." *Grieveson v, Anderson*, 558 F.3d 763, 776 (7th Cir. 2008) (citation omitted).

Dawson's other allegations include that confining P3 detainees to the wrong tier creates the risk that these detainees will have increased stress, that their ability to control their aggressive and violent impulses will decrease, and that one or more P3 detainees will act out violently against other detainees. Not only are these allegations borderline conjecture – thus not raising Dawson's right to relief above a speculative level – but Dawson fails to explain how Officer Jones purposefully, knowingly, or recklessly disregarded any such risks when assigning Robinson to Tier 5C. At best, Dawson has sufficiently alleged that Officer Jones was negligent in placing Robinson on the same tier with her based on his ignorance of the difference between the P2 and P3 mental health designations and his failure to become aware of the difference. The Court therefore grants defendants' motion to dismiss Dawson's failure to protect claim against Officer Jones.

4

*Claims Against Sheriff Dart*

Next, Dawson brings two claims against Sheriff Dart in relation to: (1) an alleged systemic practice and de facto policy at the CCJ in relation to its mental health care housing; and (2) a failure to train claim. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In her third amendment complaint, Dawson does not allege whether she is suing Sheriff Dart in his individual or official capacity, but from the nature of her claims based on *Monell* and the lack of allegations that Sheriff Dart was personally involved in any constitutional deprivations, it is clear that her claims are based on Sheriff Dart's official capacity.

When a plaintiff asserts an official capacity claim, the action is deemed to be a suit against the local government itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Although there is no *respondeat superior* liability under § 1983, a municipality may be liable if one of its practices or policies resulted in a constitutional deprivation. *Monell*, 436 U.S. at 691; *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). This deprivation can be caused by an express municipal policy, a widespread practice that is so permanent that it constitutes a practice with the force of law, or a decision by a municipal agent with final policymaking authority. *Ruiz-Cortez*, 931 F.3d at 598; *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). In addition to a municipal action, to establish *Monell* liability, a plaintiff must also show deliberate conduct and causation. *Ruiz-Cortez*, 931 F.3d at 598.

Dawson asserts that Sheriff Dart has a widespread practice and policy of depriving certain detainees of the necessary mental health care they require by housing them improperly, thereby creating a substantial risk that one or more would become dangerous to themselves or others. She supports her assertion with allegations that despite Cermak's alerts on detainees' mental health status, including Cermak's "Quick Guide to Health Alerts for Correctional Officers," and the Illinois Administrative Code's County Jail standards, CCJ officers improperly place detainees in

5

contradiction of their mental health care status.[2]

To sufficiently allege the existence of a widespread practice so permanent that it constitutes a policy with the force of law, Dawson must set forth some facts that her incident was not an isolated or random occurrence. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom."); *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) ("there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, 'except that it must be more than one instance.'") (citation omitted). To support her *Monell* claim, Dawson alleges that during the relevant six-day period in May 2016, three other detainees with P3 designations were improperly housed on Tier 5C. What Dawson does not allege is how these incidents are similar to her own. For example, she does not allege that these P3 detainees acted violently or assaulted other detainees while housed on Tier 5C. Her more general allegations, including that some P3 detainees are prone to violence, do not raise a reasonable inference that there was a widespread practice under the circumstances. *See Gill*, 850 F.3d at 344. Accordingly, Dawson has failed to plausibly allege her *Monell* claim against Sheriff Dart by raising an inference that he is liable for the alleged misconduct.

Further, Dawson contends that the alleged constitutional deprivation arises out of Sheriff Dart's failure to train the jail's officers on how to assign detainees to the proper tiers. Failure to train "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). A prerequisite to deliberate indifference is that "the defendant must have actual or constructive notice of a problem." *Miranda*, 900 F.3d at 345. Actual or constructive notice can be shown by a "pattern of similar constitutional

---

[2] The Court recognizes that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws" or "departmental regulations." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citation omitted). Dawson can only establish a failure to train claim based on her own, single incident if Robinson's assault was a "highly predictable consequence of a failure to equip law enforcement with specific tools to handle recurring situations." *Board of County Comm'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.E.2d 626 (1997).

To establish that Sheriff Dart had actual or constructive notice of a problem with detainees' housing assignments, Dawson relies on her allegations that there were three other detainees – who had the mental health status designation of P3 – housed on Tier 5C during the relevant time period in May 2016. Nevertheless, she does not allege that these detainees acted violently or assaulted other detainees while housed on Tier 5C. In fact, there are no other allegations in the third amended complaint that plausibly suggest there was a pattern of similar constitutional violations by untrained employees.

Last, Dawson argues that her single incident was a "highly predictable consequence" of Sheriff Dart's failure to train jail officials concerning proper housing. Dawson, however, does not allege sufficient facts supporting her claim that that the Sheriff's officers "so often violate constitutional rights that the need further training" was "plainly obvious" to the Sheriff. *Canton*, 489 U.S. at 390 n.10. In short, there are no plausible allegations that CCJ officers repeatedly violated the constitution when assigning detainees to their housing at the RTU. The Court therefore grants defendants' motion to dismiss Dawson's failure to train claim.

*State Law Claims*

Because the Court has granted defendants' motion to dismiss Dawson's constitutional claims over which the Court has original subject matter jurisdiction, the Court, in its discretion, declines to exercise its supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(c)(3).

7

*Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) ("there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice.").

**Conclusion**

Based on the foregoing, the Court grants defendants' Rule 12(b)(6) motion to dismiss Dawson's third amended complaint with prejudice as to Dawson's federal claims and without prejudice in relation to her state law claims [77]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 3/12/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge